IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

GABRIEL CHAVEZ,

       Plaintiff,

      vs.                                    No. 1:20-CV-00968-KRS

KILOLO KIJAKAZI, Acting Commissioner
of the Social Security Administration,

       Defendant.

**MEMORANDUM OPINION AND ORDER**

      THIS MATTER is before the Court upon Plaintiff Gabriel Chavez's Motion to Reverse and/or Remand (Doc. 23), dated June 8, 2021, challenging the determination of the Commissioner of the Social Security Administration ("SSA") that Chavez is not entitled to disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-34. The Commissioner responded to Chavez's motion on September 8, 2021 (Doc. 27), and Chavez filed a reply brief on September 22, 2021 (Doc. 28). With the consent of the parties to conduct dispositive proceedings, *see* 28 U.S.C. § 636(c); FED. R. CIV. P. 73(b), the Court has considered the parties' filings and has thoroughly reviewed the administrative record. Having done so, the Court concludes that the ALJ did not err and will therefore DENY Chavez's motion.

## I. PROCEDURAL POSTURE

      On July 10, 2018, Chavez protectively filed an initial application for disability insurance benefits. (*See* Administrative Record ("AR") at 115). Chavez alleged that he had become disabled on May 14, 2017, due to depression, anxiety, left knee and left shoulder injuries, and headaches. (*Id.* at 117). His application was denied at the initial level on November 7, 2018 (*id.* at 115), and at the reconsideration level on March 12, 2019 (*id.* at 127). Chavez requested a

hearing (*id.* at 155-56), which ALJ Jennifer M. Fellabaum conducted on January 8, 2020 (see *id.* at 47-88). Chavez was represented by counsel and testified at the hearing (*id.* at 54-79), as did a vocational expert (*id.* at 78-87).

On February 21, 2020, the ALJ issued her decision, finding that Chavez was not disabled under the relevant sections of the Social Security Act. (*Id.* at 12-22). Chavez requested that the Appeals Council review the ALJ's decision (*id.* at 208-09), and on August 10, 2020, the Appeals Council denied the request for review (*id.* at 1-3), which made the ALJ's decision the final decision of the Commissioner. On September 22, 2020, Chavez filed the complaint in this case seeking review of the Commissioner's decision. (Doc. 1).

## II. LEGAL STANDARDS

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016); *see also* 42 U.S.C. § 405(g). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *See, e.g.*, *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). Although a court must meticulously review the entire record, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *See, e.g.*, *id.* (quotation omitted).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted); *Langley*, 373 F.3d at 1118 (quotation omitted). Although this threshold is "not high," evidence is not substantial if it is "a mere scintilla," *Biestek*, 139 S. Ct. at 1154 (quotation omitted);

"if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118; or if it "constitutes mere conclusion," *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005) (quotation omitted). Thus, the Court must examine the record as a whole, "including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan*, 399 F.3d at 1262. While an ALJ need not discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence," and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). "Failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (quotation omitted).

**B.  Disability Framework**

"Disability," as defined by the Social Security Act, is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *Wall v. Astrue*, 561 F.3d 1048, 1051-52 (10th Cir. 2009); 20 C.F.R. §§ 404.1520, 416.920. If a finding of disability or non-disability is directed at any point, the SSA will not proceed through the remaining steps. *Thomas*, 540 U.S. at 24. At the first three steps, the ALJ considers the claimant's current work activity and the severity of his impairment or combination of impairments. *See id.* at 24-25. If no finding is directed after the third step, the Commissioner must determine the claimant's residual functional capacity ("RFC"), or the most

that he is able to do despite his limitations. *See* 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). At step four, the claimant must prove that, based on his RFC, he is unable to perform the work he has done in the past. *See Thomas*, 540 U.S. at 25. At the final step, the burden shifts to the Commissioner to determine whether, considering the claimant's vocational factors, he is capable of performing other jobs existing in significant numbers in the national economy. *See id.*; *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

### III. THE ALJ'S DETERMINATION

The ALJ reviewed Plaintiff's claim pursuant to the five-step sequential evaluation process. (AR at 13-14). First, the ALJ found that Chavez last met the insured status requirement on December 31, 2019, and had not engaged in substantial gainful activity since prior to his alleged onset date. (*Id.* at 14). The ALJ then found at step two that Chavez suffered from severe impairments in the form of depression, anxiety, and vestibular migraines from his alleged onset date through his date last insured, as well as the additional severe impairment of carpal tunnel syndrome from January 1, 2018 through his date last insured. (*Id.*). In addition to identifying several nonsevere impairments, the ALJ further found that Chavez's allegations of left hip pain or left knee pain, problems with his back and elbows, and arthritis did not amount to medically determinable impairments. (*Id.* at 14-15).

At step three, the ALJ concluded that Chavez did not have an impairment or combination of impairments that met the criteria of listed impairments under Appendix 1 of the SSA's regulations. (*See id.* at 15-16). In so holding, the ALJ found that Chavez possessed only mild or moderate limitations in the four broad areas of mental functioning, meaning that he did not satisfy the "paragraph B" criteria of sections 12.04 (depressive, bipolar and related disorders)

and 12.06 (anxiety and obsessive-compulsive disorders) of Appendix 1, and that the record also did not establish that the "paragraph C" criteria of those listings. (*See id.*).

Proceeding to the next step, the ALJ reviewed the evidence of record, including statements and other medical evidence from Chavez's treating providers, prior administrative medical findings, and Chavez's own subjective symptom evidence. (*See id.* at 17-19). In doing so, the ALJ determined that medical opinions from treating physician John Aragon, M.D., and treating therapist Julia Eddy, LCSW, were not persuasive. (*See id.* at 19). Based on her review of the evidence, the ALJ concluded that from his alleged onset date until January 1, 2018, Chavez possessed an RFC to perform medium work with additional exertional and nonexertional modifications. (*See id.* at 16-17). Based on medical evidence concerning pain and paresthesia in Chavez's hands beginning in 2018 and a relatively recent diagnosis of carpal tunnel syndrome, the ALJ further concluded that from January 2018 onward, Chavez possessed an RFC to perform light work with additional exertional and nonexertional modifications, including a limitation to "frequently" fingering, handling, or feeling bilaterally. (*See id.* at 20).

From the foregoing RFC, the ALJ determined that Chavez was unable to perform any past relevant work. (*See id.* at 20-21). At step five, the ALJ determined that Chavez was able to perform other jobs in the national economy. (*See id.* at 21-22). The ALJ therefore concluded that Chavez's work was not precluded by his RFC and that he was not disabled. (*See id.* at 22).

## IV. DISCUSSION

Chavez challenges the ALJ's consideration of Dr. Aragon's medical opinion evidence (Doc. 23 at 25-26) and her consideration of evidence from Ms. Eddy (*id.* at 26-27). He further challenges the ALJ's handling of his subjective symptom evidence. (*See id.* at 27-29). Having

considered the parties' filings and reviewed the record in its entirety, the Court concludes that

these arguments are not well-taken and that remand is not proper.

## A.   Evaluation of Subjective Symptom Evidence

An ALJ's subjective symptom evaluations "warrant particular deference." *White v.*

*Barnhart*, 287 F.3d 903, 910 (10th Cir. 2002).[1] Still, such "deference is not an absolute

rule." *See Kellams v. Berryhill*, 696 F. App'x 909, 917 (10th Cir. 2017) (unpublished)[2]

(quoting *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993)). In evaluating a claimant's

subjective symptom evidence and other matters, an ALJ must discuss not only "the evidence

supporting his decision," but also "the uncontroverted evidence he chooses not to rely upon, as

well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009-10

(10th Cir. 1996). Along these lines, "[i]t is improper for the ALJ to pick and choose among

medical reports, using portions of evidence favorable to his position while ignoring other

evidence." *Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008) (quotation omitted).

Likewise, an ALJ is not permitted to "mischaracterize or downplay evidence to support her

findings." *Bryant v. Comm'r, SSA*, 753 F. App'x 637, 641 (10th Cir. 2018) (unpublished)

(citing *Talbot v. Heckler*, 814 F.2d 1456, 1463-64 (10th Cir. 1987)). Failure to follow these

controlling legal standards is grounds for remand. *See, e.g.*, *Byron v. Heckler*, 742 F.2d 1232,

1235 (10th Cir. 1984).

The assessment of subjective symptom evidence is a two-step process, requiring the ALJ

to first determine whether the claimant has a medically determinable impairment that could

---

[1] In 2016, SSA eliminated the use of the term "credibility" when describing a claimant's testimony to "clarify that subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2016 WL 1119029, at *1 (superseding SS 96-7p). Older authorities that addressed a claimant's "credibility," *see, e.g.*, *White*, 287 F.3d at 910, are therefore construed as referring to an individual's subjective symptom evidence.
[2] The Court cites *Kellams*, other unpublished decisions of the Tenth Circuit, and the district court decisions referenced in this opinion for their persuasive value unless otherwise stated.

reasonably be expected to produce his alleged symptoms. *See* Social Security Ruling (SSR) 16-3p, 2016 WL 1119029, at *3 (Mar. 16, 2016).[3] If she so determines, the ALJ must then evaluate the intensity and persistence of the claimant's symptoms and determine the extent to which his symptoms limit his ability to perform work-related activities. *See id.* at *4. At this stage, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.*; *see also id.* at *4-7 (elaborating on factors to consider); 20 C.F.R. § 404.1529(c) (same).

Chavez at times argues that the ALJ should have expressly addressed similarities between his subjective symptom statements and the opinions of Dr. Aragon and Ms. Eddy. (*See* Doc. 23 at 28); (Doc. 28 at 3 & n.6). However, because the Court concludes that the ALJ properly evaluated the opinion evidence of both sources and determined that their opinions were unpersuasive as discussed below, it cannot be said that those opinions were significantly probative to the ALJ's assessment of Chavez's subjective symptom evidence. *Cf. Clifton*, 79 F.3d at 1010.

More narrowly, Chavez contends that the ALJ erred at the second step of the SSR 16-3p analysis by failing to "meaningfully consider the objective evidence" supporting his subjective symptom evidence regarding his upper extremities. (*See* Doc. 23 at 28). In particular, Chavez suggests that the ALJ should have been more explicit in discussing evidence from 2018

---

[3] SSRs are binding on the SSA, and while they do not have the force of law, courts traditionally defer to SSRs since they constitute the agency's interpretation of its own regulations and foundational statutes. *See Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990); 20 C.F.R. § 402.35; see also *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993) (SSRs entitled to deference).

purportedly showing that he was "significantly more limited with his left hand than his right

hand." (*See* Doc. 28 at 3) (indirectly citing AR at 465-68, 488-91).

The Court finds no legal error here. The ALJ directly addressed medical evidence

concerning several of the alleged limitations raised by Chavez in his brief. *Compare* (Doc. 23 at

28) (arguing that ALJ overlooked evidence supporting finding of, *inter alia*, bilateral carpal

tunnel diagnosis and surgery on right hand), *with* (AR at 20) (ALJ decision noting, among other

things, bilateral carpal tunnel diagnosis and surgery on right hand). The ALJ also adequately

cited Chavez's own subjective symptom testimony on this issue. (*See id.* at 17) ("The claimant

testified that his carpal tunnel syndrome (CTS) problems affect both hands, but his left hand

worse than his right."). For that matter, the ALJ noted that prior administrative medical findings[4]

showed restrictions were more necessary as to Chavez's left hand than as to his right, and she

determined that those findings were partially persuasive with respect to the post-2017 RFC.[5] (*See*

*id.* at 19) (citing, *e.g.*, *id.* at 123, 136-38). Yet recent medical records—including the documents

cited by Chavez (*see* Doc. 28 at 3 & n.4) (indirect citations omitted)—also suggest that even if

his left hand was at times more limited than his right, this was only marginally the case. (*See* AR

at 490) (showing, *e.g.*, "5-/5 of the left grip" and decreased left-hand sensation). This conclusion,

too, is consistent with the aforementioned prior administrative medical findings, which called for

no greater than "frequent" manipulative restrictions as to Chavez's left hand. (*See id.* at 123,

136-38). Indeed, the recent objective records show that Chavez's left upper extremity possessed

---

[4] "A prior administrative medical finding is a finding, other than the ultimate determination about whether [a claimant is] disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review . . . based on their review of the evidence in [the] case record . . . ." 20 C.F.R. § 1513(a)(5).
[5] By "post-2017 RFC," the Court means the RFC applicable to Chavez beginning on January 1, 2018. (*See* AR at 20). The ALJ determined that a more restrictive RFC was not required prior to that date because the objective medical record indicated that the onset of Chavez's carpal tunnel impairment occurred no earlier than January 2018. (*See id.*). Chavez does not challenge that determination.

the same level of weakness as his pre-surgery right hand (*cf. id.* at 467) (showing, *e.g.*, "5-/5 of the right grip" and decreased right-hand sensation)—and per the ALJ, it was precisely that level of limitation that called for the imposition of no more than "frequent" handling by an extremity (*see id.* at 20) (citing *id.* at 467) (noting this specific level of limitation did not support "[f]urther limit to occasional manipulatives").

In short, the aforementioned record indicates that even if Chavez's left upper extremity were more limited than his right, this was only so to a minor degree, and only to a degree that warranted minimal restrictions[6] as to either hand. When the record is considered in this light, and in light of the "particular deference" owed to subjective symptom determinations, *see White*, 287 F.3d at 910, a review of the ALJ's decision reveals that she properly considered "the entire case record, including the objective medical evidence" as well as other evidence, when evaluating Chavez's subjective symptom evidence concerning his upper extremities. *See* SSR 16-3p, 2016 WL 1119029, at *4.

Chavez also argues that the ALJ failed to properly consider the evidence regarding his allegedly disabling mental impairments. (*See* Doc. 23 at 28). Yet Chavez's characterization of the ALJ's findings as to the impact of these impairments is not supported by the record. Despite

---

[6] Although he does not directly argue the point, Chavez may be operating on the belief that the RFC restriction to "frequent" manipulation is only appropriate as to his allegedly stronger right hand and that greater restrictions are required as to his left hand. (*See, e.g.*, Doc. 28 at 2-3) (arguing that ALJ improperly "lumps" hands together despite subjective testimony concerning greater left-hand limitations). But if anything, the later medical records cited by Chavez could be read to indicate that no right-hand restrictions are necessary at all. (*See* AR at 490) (noting full strength and sensation in right hand in August 2018); (*see also id.* at 20) (noting post-surgery improvement in right hand). The more logical inference, therefore, is that the ALJ's RFC restriction to "frequent" handling bilaterally is intended to account for the relatively minor limitations that the objective medical records reflect as to either hand. (*See id.* at 467, 490) (slight weakness and decreased sensation in right and left hands, respectively). After all, a restriction to "frequently" performing activities is not the same as no restriction at all, but it does represent a relatively low level of restriction that would be consistent with a lesser degree of limitation. *See* Program Operations Manual System ("POMS") DI § 25001.001(A)(11), (20), (33) (comparing restrictions to "constant[]" behavior, where activity is allowed for two-thirds or more of a workday, to restrictions to "frequent[]" conduct, allowing activity for only one-third to two-thirds of a workday); *see also McNamar v. Apfel*, 172 F.3d 764, 766 (10th Cir. 1999) (POMS is "a set of policies issued by the [SSA] to be used in processing claims"); *Ramey v. Reinertson*, 268 F.3d 955, 964 n.2 (10th Cir. 2001) (holding that courts generally defer to POMS provisions).

Chavez's claim that the ALJ found his relevant allegations to be "inconsistent with his reported daily activities" (*see* Doc. 28 at 4-5), the ALJ determined only that his subjective symptom evidence was somewhat inconsistent with the amount of mental health treatment he received (*see* AR at 18) and, implicitly, with the objective evidence concerning his memory (*see id.* at 16, 18) (noting testimony regarding worsening memory but objective evidence of good recent and remote memory). Otherwise, the ALJ appeared to largely *credit* Chavez's testimony as to the effect of his impairments, and she ultimately concluded that Chavez's depression and anxiety "indicate a moderate level of limitation in activity" as a result. (*See id.* at 18) (finding testimony regarding effects of medication was consistent with medical evidence); (*see also id.* at 19) (rejecting prior administrative medical findings that Chavez possessed "no severe mental impairments" and concluding instead, based on subjective testimony and other evidence, that impairments are "severe and result in limitations"). Though Chavez complains that the ALJ exaggerated the efficacy of his medication without considering their impact over the holiday period (*see* Doc. 28 at 6), the ALJ expressly cited the latter point (AR at 18), and the Court cannot disturb the ALJ's resolution of any conflicts on these evidentiary issues. *See White*, 287 F.3d at 910; *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)) ("In determining whether substantial evidence exists to support the ALJ's decision, we will not reweigh the evidence.").

Chavez raises a cursory argument that the ALJ's characterization of his mental health treatment as "very limited" was "unfair" due to his receipt of "doctor's visits, medication trials, and therapy." (*See, e.g.*, Doc. 23 at 14 n. 17, 27, 28). Absent further elaboration on this point, the Court finds no error. *See, e.g., Bainbridge v. Colvin*, 618 F. App'x 384, 387 (10th Cir. 2015) (unpublished) (rejecting attack on ALJ's characterization of therapeutics as conservative, since

frequency and variety of treatment alone "say[] little about intensity of treatment"). Nor, without

more, is there evidence of the ALJ failing to develop the record on this point as Chavez contends

(*see* Doc. 23 at 28). *See, e.g.*, *Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997) (noting

duty is limited to "fully and fairly develop[ing] the record as to material issues" and that ALJ is

not required to "exhaust every possible line of inquiry in an attempt to pursue every potential line

of questioning"). This is especially the case where Chavez points to nothing in the record

suggesting that he raised this issue as requiring further development when before the ALJ. *See*

*id.* at 1167-68 (holding that where claimant is represented by counsel at the administrative

hearing, ALJ may rely on counsel "to structure and present claimant's case in a way that [his]

claims are adequately explored" and "may ordinarily require counsel to identify the issue or

issues requiring further development").

      The ALJ's decision betrays no legal error in her evaluation of Chavez's subjective

symptom evidence. Accordingly, the Court will not direct remand on this basis.

### B.  Assessment of Medical Source Opinion Evidence

      Pursuant to recent revisions to SSA regulations, the agency "will articulate in our

determination or decision how persuasive we find all of the medical opinions and all of the prior

administrative medical findings in [the] case record." *See* 20 C.F.R. § 404.1520c(b). These

regulations impose three "articulation requirements" when an ALJ considers medical opinion

evidence. *See id.* First, "when a medical source provides multiple medical opinion(s)," the ALJ

need not articulate how she considered each individual medical opinion; rather, the ALJ "will

articulate how [she] considered the medical opinions . . . from that medical source together in a

single analysis." *Id.* § 404.1520c(b)(1). Second, while an ALJ must consider five factors when

evaluating medical opinion evidence, *see id.* § 404.1520c(c)(1)-(5), she is generally only

required to articulate her consideration of two of those factors: "[W]e will explain how we considered the supportability and consistency factors for a medical source's medical opinions . . . in your determination or decision." *Id.* § 404.1520c(b)(2). Finally, if differing medical opinions are equally well-supported and consistent with the record, the ALJ must then "articulate how [she] considered the other most persuasive factors . . . for those medical opinions." *Id.* § 404.1520c(b)(3). The revised regulations are explicitly intended to abrogate the former rules governing medical opinion evidence, including the rules requiring deference to treating physician opinions. *See, e.g.*, 82 Fed. Reg. 5844-01 at 5853-54 (Jan. 18, 2017).[7]

Certain legal principles remain in force despite the new SSA regulations. As is true with respect to other aspects of her decision, the record must reflect that the ALJ "considered all of the evidence" when evaluating medical opinions, and she must discuss not just the evidence supporting her decision, but also "the uncontroverted evidence [s]he chooses not to rely upon" and "significantly probative evidence [s]he rejects." *See Clifton*, 79 F.3d at 1009-10. Further, the ALJ may not "mischaracterize or downplay evidence to support her findings," *Bryant*, 753 F. App'x at 641 (citation omitted), and she may not "pick and choose among medical reports, using portions of evidence favorable to [her] position while ignoring other evidence," *Carpenter*, 537 F.3d at 1265 (quotation omitted).

---

[7] Chavez argues that, notwithstanding the new regulations, previous judicial constructions of the earlier administrative language require the ALJ to treat examining and treating physician medical opinions as "inherently more 'persuasive' than those of non-treating and non-examining sources." (Doc. 23 at 23-24). "However, 'prior judicial construction of a statute trumps an agency construction otherwise entitled to *Chevron* deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion.'" *Thompson v. Kijakazi*, No. 1:20-cv-00439 KRS, 2021 WL 4307296, at *4 (D.N.M. Sept. 21, 2021) (quoting *Nat'l Cable & Telecomm'ns Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982 (2005)); *see also Chevron, USA, Inc. v. Nat'l Res. Def. Council, Inc.*, 467 U.S. 837, 843-44 & n.11 (1984). Although he cites 42 U.S.C. § 405(g) in passing (*see* Doc. 23 at 23), Chavez presents "no developed argument as to why the new SSA regulations [concerning medical opinions] are not entitled to *Chevron* deference under this framework." *See Thompson*, 2021 WL 4307296, at *4.

Chavez challenges the ALJ's determination that the opinions of treating physician Dr. Aragon and of treating therapist Ms. Eddy lacked persuasive value. (*See* Doc. 23 at 25-27). For the reasons that follow, the Court concludes that the ALJ did not err in her evaluation of these medical source opinions.

### i.   *Dr. Aragon's Opinions*

Dr. Aragon began treating Chavez no later than 2015 (*see* AR at 410-13), with Chavez seeing him multiple times per year beginning in 2016 (*see id.* at 410-12, 414-41, 513-20); (*see also id.* at 526). Records indicate that Dr. Aragon primarily treated Chavez for anxiety, depression, and conditions arising therefrom (*see id.* at 407, 414, 418, 422, 430, 434, 438, 513, 517, 647, 651); (*see also id.* at 526) (describing diagnoses of treatment), though on occasion he would see Chavez for other matters (*see id.* at 410-13) (treatment for pneumonia); (*id.* at 663-66) (follow-up after emergency treatment for stroke); (*id.* at 679-83) (wellness exam). In a medical source statement signed on December 12, 2019, Dr. Aragon opined among other things that Chavez required certain nonexertional restrictions and that he possessed exertional limitations that restricted him to walking with a cane; that limited his sitting, standing, and walking abilities; and that restricted his ability to reach, lift, carry, or otherwise manipulate objects. (*See id.* at 526-30). The ALJ rejected these opinions as unpersuasive on grounds that they were inconsistent with the record and lacked objective medical evidence. (*See id.* at 19).

The ALJ found that there was "little to no objective medical evidence that supports [Dr. Aragon's] conclusion that [Chavez] cannot walk a single block[] and []is limited to sitting and standing for only 10 minutes each," citing normal lumbar x-ray results in 2018 and a 2016 pulmonary function test showing "only mildly reduced diffusion capacity." (*Id.*) (citing *id.* at 398-99, 402-03). Chavez argues that the ALJ did not adequately address evidence relevant to this

issue, citing a finding of "action tremor" down both legs during a May 4, 2019 hospital visit after

suffering a cerebrovascular accident. (*See* Doc. 23 at 25); (AR at 552). However, a follow-up

appointment with Dr. Aragon one month later included no indications of musculoskeletal

weakness in general, no signs of weakness in Chavez's legs, and a notation that other post-

incident weakness resolved within 24 hours of the cerebrovascular event. (*See* AR at 663-64).

Likewise, a wellness exam seven months after the stroke included no indication of walking

limitations or any need for a cane. (*See id.* at 679-83). Given this record, Chavez fails to establish

that a one-line reference concerning a solitary instance of leg weakness immediately after a

stroke, with no additional indications of weakness thereafter, constitutes "significantly

probative" evidence that the ALJ was required to discuss. *Cf. Clifton*, 79 F.3d at 1010.

Chavez also contends that the ALJ failed to properly discuss records which he says are

supportive of Dr. Aragon's findings regarding his hand-based limitations. (Doc. 23 at 25); (*see*

*also* Doc. 28 at 2) (arguing that the ALJ "fail[ed] to discuss the carpal tunnel in Plaintiff's left

hand"). This argument is without merit. Although Chavez says that the ALJ did not consider

notes from an April 6, 2018 medical visit that addressed his carpel tunnel syndrome (*see* Doc. 23

at 25) (citing AR at 374-80), the ALJ in fact cited these notes and devoted several sentences to

discussing the findings recorded therein as to both of Chavez's hands when assigning a more

restrictive RFC for the period beginning January 1, 2018 (AR at 20) (citing Exhibit "B2F/17").

Moreover, Chavez does not show that these records supported Dr. Aragon's assessment of

upper-extremity limitations. The notes—which record Tinel's sign in both wrists but "no thenar

eminence atrophy," "full strength of opposition and abduction" of both thumbs, and "[n]o focal

weakness [in] upper or lower extremities"—are not facially supportive of Dr. Aragon's opinions,

and they include no express finding of limitations greater than those provided for in the post-

2017 RFC. (*See id.* at 378-79). Similarly, an August 2018 office visit cited by Chavez (*see* Doc. 23 at 25) (citing AR at 490-91) indicates complete resolution of right-hand carpal tunnel symptoms following surgery, only slight weakness ("5-/5") and decreased sensation in the left grip but otherwise full strength in virtually all upper extremities, and no express or implicit discussion of limitations greater than those featured in the post-2017 RFC. (*See id.* at 488-92).[8] The fact that the neurologist recommended left-hand carpal tunnel release at that time, without more, does not undermine the ALJ's conclusion as to the level of limitations supported by the objective medical findings of that neurologist and other providers. Nor does that fact, without a more explicit discussion of limitations by the neurologist, necessarily provide support for Dr. Aragon's finding that greater restrictions were required.

Chavez further argues that the ALJ "fail[ed] to consider consistency at all" when evaluating Dr. Aragon's opinions as to his left-hand limitations. (Doc. 23 at 25). This argument, too, is mistaken. In rejecting Dr. Aragon's conclusions, the ALJ noted that they were "inconsistent with the record" and pointed to evidence showing, among other things, greater manipulative and handling abilities than those suggested by Dr. Aragon's opinion on Chavez's restrictions. (*See* AR at 19) (citing, *e.g.*, *id.* at 620) (Exhibit "B11F/84"). Moreover, directly preceding her assessment of Dr. Aragon's medical source statement, the ALJ discussed two prior administrative medical findings whose RFC assessments as to Chavez's left upper extremity were consistent with those included in the post-2017 RFC as to both hands, and she concluded

---

[8] As further discussed *supra*, while the ALJ only expressly noted Chavez's "5-5" strength and decreased sensation in the *right* upper extremity as addressed in a pre-surgery evaluation (*see* AR at 20) (citing Exhibit "B4F/8," AR at 467), she accounted for these symptoms via new restrictions included in the post-2017 RFC (*see id.*). In other words, the ALJ expressly concluded that the *exact* symptoms discussed in both relevant medical examinations (albeit with respect to Chavez's dominant hand in the first examination, as opposed to his non-dominant hand in the second) were adequately addressed by the post-2017 RFC. (*See id.*). Accordingly, the Court can follow the ALJ's reasoning, which stands for the conclusion that the symptoms discussed in the report that Chavez cites do not support greater limitations as to either hand than those already included in the RFC. (*See id.*).

that these prior findings were partially persuasive as to the period after January 1, 2018. (*See id.*)

(citing, *e.g.*, *id.* at 123, 136-38) (allowing for frequent handling with left upper extremity).

Because the ALJ adequately addressed the consistency of Dr. Aragon's opinions with the

evidence from other medical sources and the Court can follow her reasoning, remand on this

basis is unwarranted.

Finally, Chavez's challenge to the ALJ's assessment of Dr. Aragon's mental-functioning

opinions (Doc. 23 at 26) is baseless. Although Chavez complains that "the ALJ never

consider[ed] Dr. Aragon's opinion" regarding his mental functioning (*see id.*), the revised

regulations do not require the ALJ to address every medical opinion provided by a source when

evaluating that source's persuasiveness; only a "source-level articulation" is required. *See* 20

C.F.R. § 1520c(2)(b)(1). But even if this were not true, the ALJ expressly noted Dr. Aragon's

opinion "that the claimant's symptoms constantly interfere with his attention and concentration[]

and [that] he is incapable of even low stress jobs." (*See* AR at 19). And despite Chavez's

argument that the ALJ failed to adequately address significantly probative evidence in the form

of Ms. Eddy's opinions (*see* Doc. 23 at 26), the ALJ did address that evidence at the source level

and, as discussed below, explained why she was rejecting that opinion evidence. *Cf. Clifton*, 79

F.3d at 1010 (ALJ must discuss "significantly probative evidence" she rejects).

Chavez has not established that the ALJ erred in her evaluation of Dr. Aragon's opinions.

Remand on this basis is not proper.

### ii.   *Ms. Eddy's Opinions*

Chavez began receiving counseling from Ms. Eddy in January 2019, starting with weekly

appointments for the first month and transitioning to monthly appointments thereafter. (*See* AR

at 532). In December 2019, Ms. Eddy submitted a medical source statement which discussed

Chavez's symptoms and conditions and provided opinions as to his nonexertional limitations. (*See id.* at 532-36). The ALJ, finding that Ms. Eddy's opinions were "grossly inconsistent with and unsupported by the record," determined that those opinions were unpersuasive. (*Id.* at 19).[9]

In discussing the consistency of Ms. Eddy's opinions with the record, the ALJ cited Chavez's "very limited mental health treatment"[10] and his testimony that "[his] medications have been working and he has gotten his anger issues under control." (*Id.*); (*see also id.* at 18). Although Chavez faults the ALJ for failing to discuss *medical* evidence with respect to this factor (*see* Doc. 23 at 26), the ALJ is not limited to considering medical evidence when articulating the consistency of a medical opinion with the record. *See* 20 C.F.R. § 404.1520c(c)(2) ("The more consistent a medical opinion(s) . . . is with the evidence from other medical sources *and nonmedical sources* in the claim, the more persuasive the medical opinion(s) . . . will be.") (emphasis added). Further, the only medical opinions cited by Chavez as purportedly consistent with Ms. Eddy's opinions concerning his work-related mental abilities are Dr. Aragon's opinions (*see* Doc. 23 at 27)—which, as previously noted, the ALJ adequately addressed before concluding that those opinions were not persuasive. Consequently, the Court does not find that the ALJ failed to account for "significantly probative" evidence, *cf. Clifton*, 79 F.3d at 1010, or failed to follow governing legal principles in addressing the consistency factor.

---

[9] The parties appear to agree that the ALJ was required to assess Ms. Eddy's opinions under the standards applicable to opinions from *medical* sources. (*See* Doc. 23 at 26) (citing 20 C.F.R. § 1520c(c)) (discussing articulation requirements for medical sources), (Doc. 27 at 14) (citing 20 C.F.R. § 1520c(b)(2), (c)(1))) (same). The Court likewise concludes that Ms. Eddy, as a licensed clinical social worker, constitutes a "medical source" for purposes of the articulation requirements in 20 C.F.R. § 1520c. *See* 20 C.F.R. § 1502(d) (defining "medical source" as "an individual who is licensed as a healthcare worker by a State and working within the scope of practice permitted under State or Federal law"); 82 Fed. Reg. 5844, 5846-47 (Jan. 18, 2017) (discussing whether "medical sources, *such as licensed clinical social workers*," should be considered as "acceptable medical sources") (emphasis added). *But cf. Kulp v. Comm'r of Soc. Sec.*, No. 2:20-cv-6188, 2021 WL 4895342, at *14 & n.8 (S.D. Ohio Oct. 20, 2021) (concluding that licensed independent social worker was a "nonmedical source" because such workers are not *acceptable* medical sources).

[10] As previously discussed, the Court rejects Chavez's argument that this characterization of his treatment was "unfair." *See, e.g., Bainbridge*, 618 F. App'x at 387.

To the extent that Chavez argues that the ALJ mischaracterized or ignored his testimony in finding inconsistencies with Ms. Eddy's opinions (*see, e.g.*, Doc. 23 at 27) (discussing anger and memory issues); (Doc. 28 at 6) (discussing medication efficacy), the Court finds no inaccuracies or pertinent omissions in the ALJ's discussion. The ALJ accurately described Chavez's testimony concerning the challenges arising during the winter holidays and the relative efficacy of his medication at other times (*see, e.g.*, AR at 18, 19) (noting that medications "have been working" outside of holiday periods); (*id.* at 62-63) (noting generally that holiday seasons are more stressful due to limitations and inability to "provide for my daughter for Christmas"), and she sufficiently addressed Chavez's testimony concerning his improvements in controlling his anger problems (*see id.* at 16, 18, 19); (*see also id.* at 75-76). The ALJ also acknowledged Chavez's subjective symptom evidence concerning his memory (*see id.* at 18), but she explained why the objective medical record indicated no more than a mild limitation in that functional ability despite his testimony (*see id.* at 16) (citations omitted) ("Good recent and remote memory are noted throughout the record."). The ALJ's accurate characterization of Chavez's subjective symptom evidence, her reliance on that evidence where it was supported by the record, and her rejection of that evidence where it found less record support all amounted to substantial evidence in support of her determination that Ms. Eddy's opinions were not persuasive.

Finally, although Chavez perfunctorily argues that the ALJ failed to address the supportability factor when evaluating Ms. Eddy's opinions (*see* Doc. 23 at 26-27), the Court finds no indication that this is the case. The ALJ's discussed objective medical evidence concerning Chavez's nonexertional limitations throughout her decision (*see, e.g.*, AR at 16) (discussing, *e.g.*, mental status observations regarding memory, judgment, and thought content), and the Court can follow the ALJ's conclusions as to why this evidence did not provide support

for Ms. Eddy's finding of "no useful ability to function in almost every area of mental functioning" (*see id.* at 19); (*see also id.* at 534). Moreover, Ms. Eddy's own mental status findings appear to be consistent with the RFC (*see id.* at 16-17, 20) and are not, on their face, supportive of Ms. Eddy's opinion that Chavez is virtually unable to perform most mental abilities needed to work. (*See id.* at 533). Chavez has not sufficiently explained why a contrary conclusion is called for.

The ALJ supported her evaluation of Ms. Eddy's opinions with substantial evidence, and she followed controlling legal principles in doing so. Because Chavez has not shown otherwise, the Court finds no reason to remand on this basis.

### V.  CONCLUSION

Having conducted a thorough review of the entire administrative record, the Court concludes that the ALJ applied the correct legal standards and that her factual findings were supported by substantial evidence. Chavez's arguments to the contrary are not well-taken. According, Chavez's motion to remand (Doc. 23) is **DENIED**.

**KEVIN R. SWEAZEA**
**UNITED STATES MAGISTRATE JUDGE**